RECEIVED
USDC. CLERK, CHARLESTON. SC
2010 SEP 28 P 3: 06

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Edwin Reeves Hazel, III, | C. A. No. 2:09-3276-RMG-RSC |
| Plaintiff, | |
| -versus- | **REPORT AND RECOMMENDATION** |
| Captain C. McElvogue and Officer K. Shuler, | |
| Defendants. | |

This civil rights action under 42 U.S.C. § 1983[1] (West 1994 & Supp. 1998) brought by a former pre-trial detainee proceeding <u>pro se</u> and <u>in forma pauperis</u> is before the undersigned United States Magistrate Judge for a report and recommendation on the defendant's motion for summary judgment. 28 U.S.C. § 636(b).

The Plaintiff, Edwin Reeves Hazel, III, filed this action on December 22, 2009, and named Captain McElvogue, who is the

---

[1] Section 1983, titled a civil action for deprivation of rights reads in relevant portion:
  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

director of the Hill Finklea Detention Center (HFDC)[2] in Moncks and Officer K. Shuler, an officer at HFDC as defendants. He seeks damages.

Hazel was a pre-trial detainee at the HFDC at the times relevant to this complaint. In his complaint, he asserts that the defendants retaliated against him for filing civil rights suits against them as follows:

> 1. An unknown person misappropriated his telephone PIN number and Shuler and McElvogue refused to initiate an investigation into the matter and refused to change Plaintiff's telephone PIN number for the second time while other inmates, like his ex-roomate Andian Hernandez, were allowed a third PIN number
>
> 2. Shuler refused to allow the plaintiff purchase money orders which he wanted to use to obtain copies of his 3 other lawsuits in this court
>
> 3. Shuler refused to allow the plaintiff to send mail Registered Mail, return receipt requested, which mail was "legal mail"
>
> 4. Shuler refused to allow the plaintiff receive from the publisher a publication to which he subscribed, "Prison Legal News"
>
> 5. the two defendants "are trying to retaliate and hinder the success of my pending lawsuits"

On August 25, 2010, the defendants filed a motion for summary judgment with McElvogue's affidavit and various exhibits. On August 26, 2010, the plaintiff was given an explanation of dismissal and summary judgment procedure as well as pertinent

---

[2] HFDC was formerly known as the Berkeley County Detention Center.

extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). The plaintiff opposed the motion on September 10, 2010, and filed his own affidavit. Hence, it appears consideration of the motion is appropriate.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Where a case is "decided on summary judgment, there have not yet been factual findings by a judge or jury, and [the appellant's] version of events ... differs substantially from [the appellee's,] ... courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the ... motion." Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1774 (2007) (internal quotation marks and alterations omitted).

Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof.

Id., 477 U.S. at 322. The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. See, Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by a preponderance of the evidence, that the plaintiff is entitled

to judgment in his favor. Id., 477 U.S. at 252.

## **DISCUSSION**

A review of the record and relevant case law reveals that the matter is not subject to summary judgment at this time.

The defendants raised in their answer the affirmative defense of Plaintiff's failure to comply with the Prison Litigation Reform Act's ("PLRA'S") exhaustion requirement which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a)i, see also, Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983 (2002). In their summary judgement motion the defendants again asserted that this failure entitled them to judgment as a matter of law on all claims. However, the defendants offered solely a copy of the HFDC's Procedure 701 contained in the HFDC Policy and Procedure Manual to carry their burden to prove the affirmative defense. The defendant did not file any affidavits, or other exhibits.

Procedure 701 reads as follows:

**Hill-Finklea Detention Center Policy & Procedure Manual**

Procedure HFDC 701      Distribution: All

Inmate Grievance Procedures

**PURPOSE**

5

To describe the grievance procedures that will be available to inmates housed in the Hill-Finklea Detention Center.

**POLICY**

It shall be the policy of the Hill-Finklea Detention Center to provide inmates an internal mechanism for resolving complaints arising from institutional matters, so as to reduce the need for litigation and afford staff the opportunity to improve Detention Center operations.

**PROCEDURE**

The inmate grievance procedure is an internal administrative means for resolving complaints and identifying problematic management areas. It is designed to supplement, but not replace, the informal communication process or disciplinary procedures outlined in the Hill-Finklea Detention Center Policy and Procedure Manual.

I.  Filing

   A.  An inmate may file a grievance at any time to bring a problem to staff's attention or to appeal a specific action such as a disciplinary sanction. An inmate may file a grievance only for him or herself.

   B.  Only one grievance may be filed at any one time on a single incident or item of concern. An inmate may withdraw a previously filed grievance at any time.

   C.  Staff members will not retaliate against an inmate filing or withdrawing a grievance.

II. Basis for Grievance

   A grievance may be initiated for an alleged violation of civil, constitutional, or statutory rights or of policy; an alleged criminal or prohibited act by a staff member, to resolve a condition existing within the Detention Center that creates unsafe or unsanitary living conditions; or to appeal a decision of the Disciplinary Committee or classification status.

III. Return of grievance

   An inappropriately filed grievance or one that concerns a non-grievable issue will be returned to the inmate.

IV. Grievance Classifications

A grievance will be classified as either an informal, standard, or emergency grievance.

V. Informal Grievance

   A. An inmate may voice an informal grievance to any staff member at any time. When presented with an informal grievance, that correctional officer may initiate corrective action, if the action is within the normal scope of his or her responsibility. However, if an inmate voices a grievance to a staff member that is beyond the scope of that correctional officer's authority and appears to require prompt attention, that officer will notify and forward the grievance to the Shift Sergeant.

   B. Supervisors, when advised of an inmate's informal grievance, may at their discretion attempt to resolve the matter or have the inmate initiate a standard grievance.

VI. Standard Grievance

   A. Any time within five (5) days after a potentially grievable event has occurred; an inmate may file a formal, written grievance. The inmates will be provided with Grievance Forms.

   B. A staff member will instruct the inmate on the basic requirements for filling out the form if the inmate so request.

   C. Once the inmate has completed the Grievance Form, the inmate will place it into the mailbox in the housing unit.

   D. A copy of the Grievance Form with the final written formal resolution will be returned to the inmate. The original Grievance Form with the final written formal resolution will be forwarded to the Investigations Sergeant for review.

   E. If the original Grievance Form is complete, the Investigations Sergeant will file the grievance. Grievance Forms that are incomplete will be returned to the action officer for appropriate action and completion. Updated or corrected Grievance Forms will be returned to the Investigations Sergeant for review and filing.

VII. Emergency Grievance

    A. Emergency Grievances are those involving an immediate threat to the welfare or safety of an inmate. Processing for emergency grievances will begin with the initial determination by the receiving staff member that the issue raised is life-threatening. Emergency grievances may be given directly to a Shift Supervisor by an inmate.

    B. If the Shift Supervisor determines the grievance is an emergency matter, it will be given immediate attention. If resolved at shift level, a report will be prepared by the Shift Supervisor for the Investigations Sergeant, describing the nature of the problem and the resolution achieved. Emergency grievances that cannot be resolved at the shift level will be forwarded, without delay, to the Investigations Sergeant.

    C. If, after consideration, the Shift Supervisor determines the matter is not an emergency issue, standard processing will apply.

VIII. Grievance Committee

    A. In the event a grievance cannot be resolved to the inmate's satisfaction by action at the Deputy Director's level within five (5) business days, a Grievance Committee will be convened to resolve the issue.

    B. The Grievance Committee will consist of, but is not limited to, the Director and two (2) persons not involved in the matter being grieved.

    C. The inmate may appear before the Grievance Committee to present his/her case.

    D. The committee will review all facts discovered in the investigation and any additional information presented by the inmate in person and will make a decision within five (5) business days. The Grievance Committee will meet as needed.

IX. Appeals of Grievance Committee Decisions

    A. Inmates who are dissatisfied with the resolution of a grievance by the Grievance Committee will have five (5) business days after receipt of the notice of decision to

appeal to the Director.

    B.   The Director will then have ten (10) business days to make a determination on the appeal and to reply to the inmate, except in disciplinary cases. The reply will be in writing, and the inmate will sign to indicate he/she has received notification of the appeal decision. The Director's decision as to inmate grievances will be final.

X.   Records

    A.   The Investigations Sergeant will maintain a monthly log of grievances filed under this procedure, as to relevant dates, the persons filing, topics, and disposition.

    B.   The Director will review a monthly summary report of all grievances to ascertain patterns of problem areas in the institution and to facilitate intervention in those areas.

XI.   Other

    A.   Inmates who have a pending grievance at the time of release lose all standing with respect to any further internal administrative remedy of the matter under consideration.

    B.   All original written grievances will be filed in the Investigations Sergeants Office and retained for a period of three (3) years.

    C.   All written grievances will be considered confidential. Grievance records will only be disclosed or duplicated with the authorization of the Director.

Procedure 701 indicates that it is to be distributed to "all." There is no evidence that "all" means it was distributed to all inmates. It is just as likely if nor more likely that it was distributed to all HFDC personnel, but not to inmates.

Courts have long recognized the importance of ensuring that inmates have avenues for discovering the procedural rules governing their grievances, see, Dillon v. Rogers, 596 F.3d 260

9

(5th Cir 2010); Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (per curiam) (premising ruling that remedies were available on prisoner's knowledge of grievance procedures); Ferrington v. La. Dep't of Corrs., 315 F.3d 529, 532 (5th Cir. 2002) (per curiam) (premising ruling that remedies were available on fact that prisoner "was well aware of the general procedural requirements described in the inmate handbook"); Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005) (premising ruling that remedies were available on prisoners' admission of receipt of prisoner guidebook and guidebook's explanation of "the applicable grievance procedure and its application to all aspects of inmate life"). When a detainee has no means of verifying the administrative grievance process, officials may indeed make remedies unavailable.

In contrast, the plaintiff filed his own affidavit under penalty of perjury to support his argument that Defendants have not carried their burden to prove that he failed to comport with the PLRA's exhaustion requirement and are, therefore, not entitled to summary judgement. Plaintiff affied that the HFDC has no *available* grievance procedure, has no grievance forms *available* to detainees, and that he has attempted to grieve the issues he raised in the instant suit by submitting handwritten grievances which went unanswered.

Plaintiff has brought many Section 1983 actions in this

forum[3] against staff at the HFDC and the defendant(s) have in every instance raised the exhaustion defense and Plaintiff has filed evidence that no grievance forms are available and no response is made to "homemade" grievance forms. Thus it appears especially important to determine what, in fact, occurs at HFDC when an inmate seeks to bring a grievance.

In Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001), the court held that a "remedy" is not "available" when prison officials prevent an inmate from "utilizing" it. See also, Shah v. Quinlin, 901 F.2d 1241, 1244 (5th Cir. 1990) (holding that dismissal was premature where a pro se inmate showed a "substantial effort to obtain an administrative remedy" and alleged that irregularities in the administrative process itself prohibited him from exhausting those remedies); Holloway v. Gunnell, 685 F.2d 150, 154 (5th Cir. 1982) (holding that a pro se complaint should not be dismissed when an inmate "has made detailed allegations showing a substantial effort to obtain an administrative remedy").

When a prisoner files a grievance and has not received a timely determination, the grievance may be considered exhausted under the PLRA. As the Seventh Circuit has observed: "we refuse to interpret the PLRA 'so narrowly as to ... permit [prison

---

[3] See, C.A. Nos. 9:05-3157-SB, 0:09-1624-SB, 0:09-2405-SB, 1:09-2543-RMG-SVH, 1:09-2640-SB, 9:09-3014-JMC-BM, 2:09-3276-RMG-RSC, 9:10-143-MBS-BM, 9:10-321-MBS-BM, and 2:10-524-RMG-RSC.

officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.'" Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002); see also, Boyd v. Con. Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) (concluding "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance"), cert. denied, 544 U.S. 920, 125 S.Ct. 1639 (2005); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable."); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (agreeing that administrative remedies are deemed exhausted under the PLRA when prison officials fail to respond to inmate grievances); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) ("[O]nce [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him."); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired.").

Based on these submissions, and taken in a light most favorable to the plaintiff as the nonmoving party, it appears that a genuine material issue of fact exists of whether the plaintiff failed to comply with the PLRA's requirement that he

exhaust all available remedies prior to bringing suit. Due to the fragmentary nature of the record, it appears that the plaintiff and the defendant should be permitted a reasonable time to conduct discovery concerning exhaustion and the availability of administrative remedies.

## **CONCLUSION**

Accordingly, for the aforementioned reason, it is recommended that the motion be denied as premature with leave to refile the motion following a reasonable period of further discovery by the parties on the issue of which, if any, grievance procedures were available to the plaintiff at the relevant times.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

September 28, 2010

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within **fourteen (14) days** of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).