IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Edwin Reeves Hazel, III, ) | |
| ) | |
| Plaintiff, ) | Case No. 8:09-cv-03276-RMG-JDA |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Captain C. McElvogue and ) | |
| Officer K. Shuler, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 51.] Plaintiff was a detainee in the custody of Hill-Finklea Detention Center ("HFDC") at the time this action was filed.[1] [Doc. 1.] Plaintiff is proceeding *pro se* and brought this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

Plaintiff filed this action on December 22, 2009, alleging that Defendants retaliated against Plaintiff for other lawsuits Plaintiff has filed against Defendant C. McElvogue ("McElvogue"), Defendant Shuler ("Shuler"),[2] and other HFDC employees. [Doc. 1 at 5.] Defendants filed their first motion for summary judgment on August 25, 2010. [Doc. 42.] Plaintiff filed a response on September 10, 2010. [Doc. 45.] The Court filed a Report and

---

[1] Plaintiff is now in custody at Ridgeland Correctional Institute. [Doc. 33.]

[2] Defendants note that Plaintiff incorrectly refers to Shuler as an officer. [Doc. 51-1.]

Recommendations on September 28, 2010, recommending that Defendants' motion for summary judgment be denied as premature because additional discovery was needed to ascertain which, if any, grievance procedures were available to Plaintiff. [Doc. 46.] The District Court adopted the Report and Recommendations, denying Defendants' motion for summary judgment and granting Defendants leave to refile after a reasonable time for discovery regarding the grievance procedures available to Plaintiff. [Doc. 49.]

Defendants filed the instant motion for summary judgement on December 16, 2010. [Doc. 51.] Plaintiff filed a response to the motion on January 21, 2011. [Doc. 54.] Defendants filed a reply on January 31, 2011. [Doc. 59.]

## BACKGROUND

Plaintiff alleges that Defendants retaliated against Plaintiff in violation of Plaintiff's right of access to the courts by denying Plaintiff (1) a new telephone PIN when his was stolen, (2) a money order to obtain copies of pending lawsuits, (3) the ability to send certified mail, and (4) a legal newspaper, *Prison Legal News*, for which Plaintiff had paid. [Doc. 1 at 4–5.] Plaintiff seeks punitive damages in the amount of $1,000,000. [Doc. 1 at 6.]

Defendants submit that the Court should enter summary judgment in Defendants' favor because (1) Plaintiff's claim fails under 42 U.S.C. § 1983; (2) the alleged actions/inactions claimed by Plaintiff do not rise to the level of a constitutional violation, and Plaintiff did not suffer any infringement of constitutional and/or federal rights, privileges or immunities; (3) Plaintiff has failed to exhaust his administrative remedies as required under 42 U.S.C. § 1997e; (4) Defendants are entitled to qualified immunity; (5) Defendants are entitled to Eleventh Amendment immunity; (6) Defendants are not "persons" subject to suit

under 42 U.S.C. § 1983; and (7) Defendants are provided immunity under the South Carolina Tort Claims Act. [Doc. 51-1.]

## APPLICABLE LAW

**Liberal Construction of *Pro Se* Complaint**

Plaintiff brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any

3

> rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is

4

responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(e). Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

**Exhaustion of Administrative Remedies**

The Court will first consider Defendants' claim that they are entitled to summary judgment on Plaintiff's claim because Plaintiff failed to exhaust his administrative remedies prior to initiating litigation as required by 42 U.S.C. § 1997e(a).  The Prison Litigation Reform Act ("PLRA") defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The PLRA requires that a prisoner exhaust administrative remedies before filing a § 1983 action concerning his confinement. 42 U.S.C.A. § 1997e(a).  The Supreme Court held that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

An inmate's failure to exhaust administrative remedies is an affirmative defense that must be properly raised by the defendant.  *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005); *see also Jones v. Bock*, 549 U.S. 199, 216 (2007). Exhaustion is defined by each prison's grievance procedure, not the PLRA; an inmate must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones*, 549 U.S. at 218.  However, as the United States Supreme Court has emphasized, an inmate can only exhaust those administrative remedies that are available to the inmate. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards."); 42 U.S.C. § 1997e(a) ("No action

shall be brought with respect to prison conditions . . . until such administrative remedies as are *available* are exhausted." (emphasis added)).

In the present action, Defendants have failed to show that HFDC has a grievance procedure that was available to Plaintiff within the meaning of the PLRA. In response to the Court's first Report and Recommendations, which noted the lack of evidence of an available grievance procedure, Defendants submitted the affidavit of McElvogue and a copy of the HFDC Inmate Rules ("Inmate Rules"). [Doc. 51-2.] While McElvogue repeatedly refers to the Inmate Rules in his affidavit, he never avers that HFDC inmates receive a copy of these rules, even though the Inmate Rules contain a signature block that indicates that an inmate is supposed to sign a copy of the Inmate Rules. [*Id.*] Further, Defendants failed to submit Plaintiff's signed copy of the Inmate Rules, leaving the Court to question whether Plaintiff received a copy of the Inmate Rules and whether Defendants have a copy of the Inmate Rules signed by Plaintiff.

Moreover, Plaintiff has continuously argued that HFDC does not have a grievance policy. [Doc. 54 at 7–8; Doc. 45 at 2–3; *see* Doc. 1 at 4–5.] In other lawsuits against McElvogue and other HFDC employees, Plaintiff has also maintained his position that HFDC does not have a grievance procedure. [*See, e.g.*, C/A No. 8:10-cv-524.] Defendants have responded by producing documents that show that a grievance procedure exists [Doc. 38-3; Doc. 51-2 at 6], but Defendants have failed to show that this procedure is available for purposes of the PLRA to HFDC inmates because Defendants have failed to show that HFDC inmates know about the grievance procedure. Defendants claim that, as part of submitting a grievance, inmates are required to write the word "grievance" on an Inmate Request Form ("IRF") or a Request to Staff Member ("RSM") form [Doc. 51-2 at 1],

but none of Defendants' documents describing the HFDC grievance procedure include this requirement [*see* Doc. 38-3; Doc. 51-2 at 6]. Defendants also argue that Plaintiff knew he was supposed to write the word "grievance" on an IRF or RSM because Plaintiff did so on two forms submitted in January 2011. [Doc. 51-2 at 1.] However, Plaintiff had filed several lawsuits before January 2011 where the parties disputed the existence of a grievance procedure at HFDC, and it is not clear that Plaintiff knew to write "grievance" on the forms before he initiated his lawsuits. Therefore, the Court cannot hold that Defendants have carried their burden of proof on their exhaustion argument; Defendants have not shown that Plaintiff failed to exhaust his administrative remedies through a grievance process that was available to Plaintiff.[3]

As public officials, Defendants are all subject to suit for damages in their individual capacities in a § 1983 lawsuit, *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991). Accordingly, the Court will consider whether Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether Defendants violated Plaintiff's constitutional rights.

**Plaintiff Fails to Present a Genuine Issue of Material Fact**

Plaintiff fails to demonstrate a specific material fact giving rise to a genuine issue as to whether Defendants' allegedly retaliatory actions/inactions impeded Plaintiff's access to

---

[3] Plaintiff did file two IRF's and one RSM addressing the situations that Plaintiff claims are Defendants' retaliatory actions. [Doc. 1-1.] Plaintiff received answers to each of these requests. [*Id.*] Accordingly, the Court finds that the submission of these forms and the receipt of answers by Plaintiff was the only administrative remedy available to Plaintiff, and Plaintiff properly exhausted this remedy.

9

the courts. To state a claim that is not legally frivolous, a plaintiff whose cause of action is based on retaliation must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Neitzke v. Williams*, 490 U.S. 319, 328 (1989)). Moreover, courts treat with skepticism retaliation claims by prisoners because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Id.* at 74.

Plaintiff alleges that Defendants' retaliation was in response to other lawsuits Plaintiff had filed against Defendants. [Doc. 1 at 5.] A prisoner has a constitutionally protected right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977) (citing *Ex parte Hull*, 312 U.S. 546 (1941)). To state a claim of that right, a prisoner must include in his complaint factual allegations that tend to support his claim of deprivation of access. *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989). "A prisoner must also identify an actual injury resulting from official conduct." *Strickler v. Waters*, 989 F.2d 1375, 1382–85 (4th Cir. 1993).

While Plaintiff states a non-legally frivolous claim, Plaintiff fails to demonstrate a specific material fact giving rise to a genuine issue because he has failed to state an injury resulting from Defendants' alleged retaliation. Moreover, Defendants' actions/inactions in denying Plaintiff (1) a new telephone PIN when his was stolen, (2) a money order to obtain copies of pending lawsuits, (3) the ability to send certified mail, and (4) a legal newspaper, *Prison Legal News*, that Plaintiff had paid for were based on prison policy. A prison regulation infringing a prisoner's constitutional rights is valid if the regulation "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The

Supreme Court, in *Turner*, articulated a four-part test to determine whether a prison regulation is reasonable,[4] but as Plaintiff does not challenge the validity of HFDC's regulations nor does he allege any injury as a result of the regulations, the Court has no bases for finding the regulations unreasonable.

First, prisoners have no constitutional or federal statutory right to the use of a telephone while in prison. *U.S. v. Alkire*, 82 F.3d 411 (4th Cir. 1996) (unpublished table decision). Moreover, Plaintiff does not allege that he was denied all access to the telephone, only that Defendants would not change his PIN a second time.[5] Therefore, viewing the facts in the light most favorable to Plaintiff, there is no issue of fact as to whether Defendants' denial of a telephone PIN change injured Plaintiff.

Second, HFDC is not set up to issue money orders [Doc. 51-2 at 2; Doc. 51-3 at 2], and Plaintiff has failed to allege how the denial of his request for a money order injured him with respect to any of his lawsuits. Plaintiff simply alleges that Defendants refused to issue a money order to the district court on his behalf. [Doc. 1.] Plaintiff does not allege that Defendants' denial of a money order prevented Plaintiff from receiving copies of pending lawsuits, which was his stated purpose for obtaining the money order. Thus, Plaintiff has

---

[4] There are four factors to determine if a prison regulation that infringes a prisoner's rights is reasonable: (1) whether there is a valid, rational connection between the regulation and "the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) how accommodating the asserted constitutional right will impact guards and other prisoners; and (4) whether there are ready alternatives to the regulation. *Turner*, 482 U.S. at 89–91 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).

[5] Shuler averred that it is HFDC policy to change a prisoner's telephone PIN once for free. [Doc. 51-3 at 1, ¶ 4.] Subsequent telephone PIN change requests cost the inmate $5.00 per request. [*Id.*] However, because knowingly and willfully providing a personal telephone PIN to another prisoner is a violation of HFDC rules, prisoners who do so are not allowed to have their telephone PIN changed. [Id.] Defendants imply that Plaintiff's telephone records indicate that Plaintiff provided his telephone PIN to another prisoner, which is why Defendants denied Plaintiff's request for a third PIN (a second change of PIN). [Doc. 51-1 at 3–4.]

not created a genuine issue of material fact as to whether he was denied access to the courts because Defendants refused to issue a money order on Plaintiff's behalf.

Third, HFDC also does not send any prisoner mail as certified mail, return receipt, because of the additional time and labor it takes to process such mail. [Doc. 51-2 at 2.] Further, Plaintiff has failed to allege any injury resulting from Defendants' refusal to send certified mail. Consequently, Plaintiff has failed to create a genuine issue of material fact as to whether he was denied access to the courts because Defendants denied him the ability to send certified mail.

Finally, HFDC does not allow prisoners to receive correspondence with staples. [Doc. 51-2 at 24.] Moreover, Shuler averred that *Prison Legal News* is bound with staples, which prevented Plaintiff from receiving the newspaper.[6] [Doc. 51-3 at 2–3.] As with Defendants' other actions/inactions, Plaintiff failed to allege any injury resulting from Defendants' refusal to provide Plaintiff with *Prison Legal News*. Therefore, Plaintiff has not demonstrated a specific material fact giving rise to a genuine issue as to whether he was denied access to the courts because Defendants would not allow him to receive *Prison Legal News*.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be GRANTED.

---

[6] It is unclear from Shuler's affidavit whether Plaintiff could not receive the newspaper because he was housed in a maximum security unit or because the newspaper contained staples. [Doc. 51-3 at 2–3.] However, the Court notes that HFDC's policy prevents prisoners from having material with staples, so Plaintiff could not have the newspaper under this policy. It may also be true that HFDC prisoners housed in the facility's maximum security units have restricted access to newspapers, but the parties have not pointed the Court to this restriction, so the Court cannot find that Plaintiff could not receive the newspaper because Plaintiff was in a maximum security unit.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

April 1, 2011
Greenville, South Carolina