IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Edwin Reeves Hazel, III, | Civil Action No. 8:09-cv-3276-RMG |
| Plaintiff, | |
| vs. | ORDER |
| Captain C. McElvogue and Office K. Shuler, | |
| Defendants. | |

Plaintiff brought this action pursuant to 42 U.S.C. § 1983. As a result, this matter was referred to a Magistrate Judge for pre-trial proceedings. The Magistrate Judge has made a report and recommendation that Defendants' motion for summary judgment be granted. (Dkt. No. 75). The Plaintiff has objected and Defendants filed a reply. After a *de novo* review, this Court adopts the recommendation of the Magistrate Judge.

**Analysis**

The magistrate judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* In the absence of specific objections to the Report and

1

Recommendation, this Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198 (4th Cir. 1983).

Defendants' claim that they are entitled to summary judgment on Plaintiff's claim because Plaintiff failed to exhaust his administrative remedies prior to initiating litigation as required by 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act ("PLRA") defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The PLRA requires that a prisoner exhaust administrative remedies before filing a § 1983 action concerning his confinement. 42 U.S.C.A. § 1997e(a). The Supreme Court held that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

An inmate's failure to exhaust administrative remedies is an affirmative defense that must be properly raised by the defendant. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). Exhaustion is defined by each prison's grievance procedure, not the PLRA; an inmate must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones,* 549 U.S. at 218. However, as the United States Supreme Court has emphasized, an inmate can only exhaust those administrative remedies that are available to the inmate. *Woodford v. Ngo,* 548 U.S. 81, 85 (2006) ("Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards."); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison

conditions . . . until such administrative remedies as are available are exhausted." (emphasis added)).

In the present action, Defendants have failed to show that HFDC has a grievance procedure that was available to Plaintiff within the meaning of the PLRA. In response to the Court's first Report and Recommendations, which noted the lack of evidence of an available grievance procedure, Defendants submitted the affidavit of McElvogue and a copy of the HFDC Inmate Rules ("Inmate Rules"). (Dkt. No. 51-2). While McElvogue repeatedly refers to the Inmate Rules in his affidavit, he never avers that HFDC inmates receive a copy of these rules, even though the Inmate Rules contain a signature block that indicates that an inmate is supposed to sign a copy of the Inmate Rules. (*Id.*). Further, Defendants failed to submit Plaintiff's signed copy of the Inmate Rules, leaving the Court to question whether Plaintiff received a copy of the Inmate Rules and whether Defendants have a copy of the Inmate Rules signed by Plaintiff. Therefore, the Court cannot hold that Defendants have carried their burden of proof on their exhaustion argument; Defendants have not shown that Plaintiff failed to exhaust his administrative remedies through a grievance process that was available to Plaintiff.

As public officials, Defendants are all subject to suit for damages in their individual capacities in a § 1983 lawsuit. *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991). Accordingly, the Court has to consider whether Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether Defendants violated Plaintiff's constitutional rights.

In doing so, undersigned concludes that Plaintiff has failed to demonstrate a specific material fact giving rise to a genuine issue as to whether Defendants' allegedly

retaliatory actions/inactions impeded Plaintiff's access to the courts. To state a claim that is not legally frivolous, a plaintiff whose cause of action is based on retaliation must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Neitzke v. Williams*, 490 U.S. 319, 328 (1989)). Moreover, courts treat with skepticism retaliation claims by prisoners because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Id.* at 74.

Plaintiff alleges that Defendants' retaliation was in response to other lawsuits Plaintiff had filed against Defendants. (Dkt. No. 1 at 5). A prisoner has a constitutionally protected right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977) (citing Ex parte Hull, 312 U.S. 546 (1941)). To state a claim of that right, a prisoner must include in his complaint factual allegations that tend to support his claim of deprivation of access. *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989). "A prisoner must also identify an actual injury resulting from official conduct." *Strickler v. Waters*, 989 F.2d 1375, 1382–85 (4th Cir. 1993).

While Plaintiff states a non-legally frivolous claim, Plaintiff fails to demonstrate a specific material fact giving rise to a genuine issue because he has failed to state an injury resulting from Defendants' alleged retaliation. Moreover, Defendants' actions/inactions in denying Plaintiff (1) a new telephone PIN when his was stolen, (2) a money order to obtain copies of pending lawsuits, (3) the ability to send certified mail, and (4) a legal newspaper, Prison Legal News, that Plaintiff had paid for were based on reasonable prison policies. A prison regulation infringing a prisoner's constitutional rights is valid if

4

the regulation "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Supreme Court, in *Turner*, articulated a four-part test to determine whether a prison regulation is reasonable, but as Plaintiff does not challenge the validity of HFDC's regulations nor does he allege any injury as a result of the regulations, the Court has no bases for finding the regulations unreasonable.

First, prisoners have no constitutional or federal statutory right to the use of a telephone while in prison. *U.S. v. Alkire*, 82 F.3d 411 (4th Cir. 1996) (unpublished table decision). Moreover, Plaintiff does not allege that he was denied all access to the telephone, only that Defendants would not change his PIN a second time. Therefore, viewing the facts in the light most favorable to Plaintiff, there is no issue of fact as to whether Defendants' denial of a telephone PIN change injured Plaintiff.

Second, the institution where Plaintiff is housed is not set up to issue money orders (Dkt. No. 51-2 at 2; Dkt. No. 51-3 at 2), and Plaintiff has failed to allege how the denial of his request for a money order injured him with respect to any of his lawsuits. Plaintiff simply alleges that Defendants refused to issue a money order to the district court on his behalf. (Dkt. No. 1). Plaintiff does not allege that Defendants' denial of a money order prevented Plaintiff from receiving copies of pending lawsuits, which was his stated purpose for obtaining the money order. Thus, Plaintiff has not created a genuine issue of material fact as to whether he was denied access to the courts because Defendants refused to issue a money order on Plaintiff's behalf.

Third, the institution also does not send any prisoner mail as certified mail, return receipt, because of the additional time and labor it takes to process such mail. (Dkt. No. 51-2 at 2). Further, Plaintiff has failed to allege any injury resulting from Defendants'

refusal to send certified mail. Consequently, Plaintiff has failed to create a genuine issue of material fact as to whether he was denied access to the courts because Defendants denied him the ability to send certified mail.

Finally, HFDC does not allow prisoners to receive correspondence with staples. (Dkt. No. 51-2 at 24). Moreover, Shuler averred that Prison Legal News is bound with staples, which prevented Plaintiff from receiving the newspaper. (Dkt. No. 51-3 at 2–3). As with Defendants' other actions/inactions, Plaintiff failed to allege any injury resulting from Defendants' refusal to provide Plaintiff with Prison Legal News. Therefore, Plaintiff has not demonstrated a specific material fact giving rise to a genuine issue as to whether he was denied access to the courts because Defendants would not allow him to receive Prison Legal News.

## Conclusion

Based on the above, Defendants' motion for summary judgment is **granted**. (Dkt. No. 51).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

April 21, 2011
Charleston, South Carolina